# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| HENRY M. BROWN ) <br> ) <br> ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SUPERIOR MANAGEMENT, INC., ) <br> ) <br> ) <br> Defendant. ) | Civil Action File No.: <br> _____ <br> <br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Henry M. Brown ("Mr. Brown" or "Plaintiff"), hereby files this Complaint against Superior Business Management, Inc. ("Superior" or "Defendant") alleging violations of the Fair Labor Standards Act, as well as state law claims involving breach of implied contract, quantum meruit/unjust enrichment, and fraudulent misrepresentation.

## INTRODUCTION

1.

Mr. Brown is a highly competent veteran of the United Sates Army. After attaining the rank of Captain, Mr. Brown received an honorable discharge in 1994.

Since that time, Mr. Brown has a long history of success in all areas of business, and specifically in the area of account management and communications for a wide variety of clients. In or around September 2021, Superior's Chief Operating Officer, Anthony Smalls ("Mr. Smalls") and Superior's Chief Executive Officer, Kris Benson ("Mr. Benson") offered Mr. Brown a position as a Senior Account Executive for Superior. Mr. Brown accepted the position and worked for Superior for three months. Mr. Smalls and Superior's Chief Executive Officer, Kris Benson, agreed to pay Mr. Brown a salary of $75,000 dollars per year. To date, Superior has paid Mr. Brown nothing, despite the fact that he performed work for Superior for two and a half months.

2.

Plaintiff brings this action for unpaid wages and other violations under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 209, and various state law and equitable claims to correct unlawful employment practices by Superior, to vindicate Plaintiff's rights, and to make him whole. Mr. Brown sues because Superior suffered or permitted him to work from September 27, 2021 until January 10, 2022, and has refused to pay him anything for his work. Additionally, Mr. Brown sues for fraudulent inducement/misrepresentation, breach of implied contract, and quantum meruit/unjust enrichment.

## JURISDICTION AND VENUE

3.

At all times relevant hereto, Superior was and is a Georgia corporation doing business in this judicial district with an office located at 100 Galleria Parkway, Suite 100, Atlanta, GA 30339. Superior is subject to actions of this kind and nature and may be served by Rule 4 of the Federal Rules of Civil Procedure through its registered agent for service.

4.

Superior's business activities involve those to which the Fair Labor Standards Act applies, and Defendant is an employer under the FLSA, 29 U.S.C. § 203. For example, Defendant is engaged in interstate commerce. By way of example, Superior provides consulting services and account management to clients around the United States.

5.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391 because Defendant Superior conducts business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

## PARTIES

6.

Plaintiff Henry Brown is a citizen of the state of Georgia and resident of Cobb County, Georgia. Mr. Brown submits himself to the jurisdiction of this Court.

7.

Mr. Brown worked for Superior for three months between September and December, 2021 as a Senior Account Executive.

8.

Superior provides a variety of services to clients, including individuals with high net worth and significant assets in the sports and entertainment industries.

9.

Per its website, Superior advises its clients on "Large Purchases or decisions – such as Homes, Auto, Outside Business Ventures…Budgeting, Debt Planning and Credit Building…Tax Services…Transaction Processing [and] Trust Fund Distributions."

10.

Given his experience, Mr. Brown was supposed to supervise 3 or 4 Account Executives and generally be a liaison between the Company and its clients.

11.

Mr. Brown met with Mr. Smalls on or about September 27, 2021.

12.

During that meeting, Mr. Smalls formally offered Mr. Brown the Senior Account Executive position, which included a salary of $75,000 per year as well as health insurance and retirement benefits.

13.

Mr. Brown verbally accepted the Account Executive Position during the same meeting.

14.

Mr. Brown formally began working for Superior at its office on or about September 30, 2021.

15.

Mr. Benson sent Mr. Brown an email on September 30, 2021, with his login credentials so that Mr. Brown could access Superior's client portal, which included sensitive and confidential information, as well as access to client bank accounts.

16.

Mr. Brown began interacting with Superior's clients, as well as current account managers to learn Superior's business, while also providing his own expertise in ways that could improve Superior's business.

17.

Mr. Brown traveled to the office (in person) each day and conversed with co-workers, including Mr. Smalls and Superior's CPA, Melanie Diaz.

18.

Mr. Brown typically arrived at the office each day around 9:30 AM and would typically leave around 6:30 PM, for a total of nine hours per day of compensable work time, with an hour of non-compensable time for lunch.

19.

Mr. Brown also refereed basketball games part time in the afternoons.

20.

On days when he had a game to referee, Mr. Brown would typically leave the office around 4:00 PM.

21.

Mr. Brown communicated with Mr. Smalls on a daily basis in the office, or on days when Mr. Smalls was not physically in the office, via phone/text/email.

22.

On days when he had a game to referee, Mr. Brown always took care to notify Mr. Smalls, either verbally in the office, or if Mr. Brown was out of the office, via phone/text/email.

23.

During his time with Superior, Mr. Brown primarily managed the Company's relationship with the multi-platinum R & B group Xscape and communicated with members of the group on a regular basis.

24.

Mr. Brown performed financial analysis for Superior and its clients, including preparing spreadsheets and business plans, cost-benefit analyses, and generally helped the account executives manage client affairs and maintain relationships.

25.

Superior failed to pay Mr. Brown for hours worked through October 12, 2021.

26.

Mr. Brown notified Mr. Smalls that he had not been paid, despite Mr. Smalls' assurances that the delay was only due to Mr. Brown not having been previously in Superior's payroll system.

27.

Mr. Smalls again reassured Mr. Brown and told him he would speak with Mr. Benson about the payroll issue.

28.

Mr. Brown continued showing up for work and doing whatever Superior asked of him.

29.

In one instance, Mr. Brown drove to Henry County, Georgia, a trip of around 1.5 hours, to assist Mr. Benson with a tax issue, but never received any compensation.

30.

Mr. Brown again asked Mr. Smalls about the payroll issues after another payroll period passed on October 12, 2021.

31.

Mr. Smalls responded that he would speak with Mr. Benson about the payroll issues to make sure Mr. Brown was paid for all time worked.

32.

Mr. Benson, however, never spoke with Mr. Brown about the payroll issue, even though Mr. Benson was aware that Mr. Brown went to the office each day doing work for Superior.

33.

Finally, in or around early November, Mr. Benson and another Superior employee, Gary Clayton, asked Mr. Brown to stay in the conference room after a Company meeting to discuss Mr. Brown's employment.

34.

At that time, Mr. Benson explained that he did not want to pay Mr. Brown the $75,000 dollar per year salary that Mr. Smalls had agreed to previously.

35.

Mr. Brown responded that he was surprised because Mr. Smalls had agreed on multiple occasions that Mr. Brown's salary would be $75,000 per year.

36.

Mr. Benson responded that Mr. Smalls had conveyed that to him, but that the agreement going forward would be to pay Mr. Brown between $20-$25 per *hour*, and that Mr. Brown would not be salaried.

37.

Mr. Brown responded that he would need to consider this drastic change in pay, particularly given that Mr. Brown had previously made considerably more money and had been salaried in his previous jobs, but more importantly, that he had not been paid for some two months.

38.

Mr. Brown later contacted Mr. Smalls and asked for an explanation as to what Mr. Benson had offered.

39.

Mr. Smalls responded that he did not know Mr. Benson was going to make that change and promised to speak with Mr. Benson to make sure Mr. Brown would be paid based on their previous agreement.

40.

Consequently, Mr. Brown continued showing up for work in the office and working on various client projects.

41.

Two more weeks passed, but Mr. Smalls still failed to meet with Mr. Brown or explain why the previous agreement was being changed.

42.

Finally, in early December, Mr. Smalls again reiterated that he would speak with Mr. Benson and "clear things up."

43.

Since that time, Mr. Smalls and Mr. Benson have refused to return Mr. Brown's calls/texts.

44.

Mr. Brown eventually stopped going to the office and performing work for Superior on January 10, 2022.

## COUNT I
## FLSA VIOLATIONS

45.

Mr. Brown incorporates by reference the preceding Paragraphs as if fully restated herein.

46.

Defendant has caused Mr. Brown to be deprived of wages due to him.

47.

Defendant's actions as detailed above were willful and constitute violations of the FLSA.

48.

Specifically, Defendant has knowingly and willfully violated 29 U.S.C. § 206, which mandates a minimum wage of $7.25 per hour, and the regulations promulgated thereunder by the Department of Labor.

49.

Under 29 U.S.C. 216(b), Defendant is liable to Plaintiff in the amount of his unpaid regular and overtime wages, his reasonable attorneys' fees, and an additional amount as liquidated damages under 29 U.S.C. § 260.

## COUNT II
## QUANTUM MERUIT/UNJUST ENRICHMENT

50.

Mr. Brown incorporates by reference the preceding Paragraphs as if fully restated herein.

51.

Mr. Brown provided labor and services that assisted Superior in meeting its obligations to its clients.

52.

Superior benefitted from Mr. Brown's labor and services.

53.

Superior has failed and refused to pay Mr. Brown for his labor and services.

54.

Judgment should be issued for Mr. Brown against Superior in the full amount of Mr. Brown's damages to be determined at trial.

## COUNT III
## FRAUDULENT INDUCEMENT/FRAUDULENT MISREPRESENTATION

55.

Mr. Brown incorporates by reference the preceding Paragraphs as if fully restated herein.

56.

Superior made material misrepresentations to Mr. Brown regarding his employment and compensation (including health care and retirement benefits).

57.

As Superior's Chief Operating Officer, Mr. Smalls was authorized to extend the offer of employment on behalf of Superior and to agree to the compensation terms.

58.

Superior, by way of Mr. Smalls, made material misrepresentations to Mr. Brown regarding his employment and compensation (including health care and retirement benefits).

59.

Mr. Smalls continued to make these misrepresentations even after Mr. Benson sought to disclaim and/or to renegotiate the terms of the agreement.

60.

Mr. Smalls continued to make these misrepresentations with knowledge that they were false or with reckless disregard for the truth.

61.

Superior made these representations with the intention of deceiving Mr. Brown in order to induce him to continue working without pay/benefits.

62.

Mr. Brown relied on and was, in fact, deceived by Superior's misrepresentations, to his detriment.

63.

Mr. Brown has suffered damages as a result of Superior's misrepresentations in an amount to be determined at trial.

## COUNT IV
## ATTORNEYS' FEES AND COSTS

64.

Mr. Brown incorporates by reference the preceding Paragraphs as if fully restated herein.

65.

Despite Mr. Brown's repeated attempts to be compensated for work he performed, Superior has refused to pay Mr. Brown *any* compensation.

66.

Superior has acted in bad faith, has been stubbornly litigious, and has caused Mr. Brown unnecessary trouble and expense.

67.

Additionally, Superior has perpetrated a fraud on Mr. Brown.

68.

As a result of this conduct, Mr. Brown is entitled to recover his attorneys' fees and costs, and all other expenses of litigation.

## COUNT V
## PUNITIVE DAMAGES

69.

Mr. Brown incorporates by reference the preceding Paragraphs as if fully restated herein.

70.

Superior's acts and misrepresentations constitute willful misconduct, fraud, and wanton disregard for Mr. Brown's rights, and accordingly justify the award of exemplary and punitive damages to Mr. Brown from Superior in order to punish Superior and deter it from taking such actions against other persons in the future.

## RELIEF

Plaintiff respectfully requests that this Court:

1.

Issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured under the FLSA;

2.

Grant to Plaintiff judgment in his favor and against Defendant under all Counts of this Complaint;

3.

Order Defendant to make whole Plaintiff by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful acts, together with interest thereon, all in an amount to be proven at trial;

4.

Grant to Plaintiff punitive damages for Defendant's willful and intentional fraud perpetrated by Defendant;

5.

Grant to Plaintiff a jury trial on all issues so triable;

6.

Grant to Plaintiff a reasonable attorneys' fee and reasonable expert witness fees, as well as liquidated damages, together with any and all other costs associated with this action as provided by the FLSA; and

7.

Grant such additional relief as the Court deems proper and just.

Respectfully submitted this 22nd day of September, 2022.

*s/ Brent L Wilson*
Georgia Bar No. 767667
J. Mason Wymer, Esq.
Georgia Bar No. 256026

ELARBEE, THOMPSON, SAPP & WILSON, LLP
229 Peachtree Street, N.E., Ste. 800
Atlanta, Georgia 30303
(404) 659-6700 (Tel.)
(404) 222-9718 (Fax)
bwilson@elarbeethompson.com
wymer@elarbeethompson.com

*Counsel for Plaintiff Henry Brown*